**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AUGUSTINE BANGURA** | : | |
| 6546 Wheeler Street | : | |
| Philadelphia PA 19142 | : | |
| | : | |
| Plaintiff, | : | |
| | : | **CIVIL ACTION NO.** |
| v. | : | |
| **PHILADELPHIA MEDIA NETWORK,** | : | |
| **INC.** | : | |
| 400 N Broad St | : | |
| Philadelphia, PA, 19130 | : | |
| | : | |
| Defendant, | : | |
| | : | |
| **CBS BROADCASTING, INC.** | : | |
| 51 West 52nd Street | : | |
| New York, NY 10019 | : | |
| | : | |
| Defendant, | : | |
| | : | |
| **FOX TELEVISION STATIONS, INC.** | : | |
| 1211 Avenue of the Americas | : | |
| New York, NY 10036 | : | |
| | : | |
| Defendant, | : | |
| | : | |
| **NBCUNIVERSAL, INC.** | : | |
| 30 Rockerfeller Plaza | : | |
| New York, NY 10112 | : | |
| | : | |
| Defendant, | : | |
| | : | |
| **METROCORP, INC.** | : | |
| 1818 Market Street, 36th Floor | : | |
| Philadelphia, PA 19103 | : | |
| | : | |
| Defendant, | : | |
| | : | |
| **MARANATHA BROADCASTING** | : | |
| **COMPANY, INC.** | : | |
| 436 Northampton Street | : | |
| Easton, PA 18042 | : | |
| Defendant, | : | |

**AMERICAN BROADCASTING
COMPANY, INC.**
77 West 66th Street
New York, NY 10023

      Defendant,

**MEDIANEWS GROUP**
101 West Colfax Avenue, Suite 1100
Denver, CO 80202

      Defendant,

**ADVANCE PUBLICATIONS, INC.**
950 W Fingerboard Rd
Staten Island, NY 10305

      Defendant,

**LANCASTER NEWSPAPERS, INC.**
8 W. King Street
Lancaster, PA 17603

      Defendant,

**LOCAL MEDIA GROUP, INC.**
P.O. Box 580
Middletown, NY 10940

      Defendant,

**THE ASSOCIATED PRESS**
450 West 33rd Street
New York, NY 10001

      Defendant,

**TIME, INC.**
1271 Ave. Of The Americas
New York, NY 10020

      Defendant,

**DAILY NEWS, LP**
4 New York Plaza, Floor 6

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

New York, NY 10004

|                              |     |
|------------------------------|-----|
| Defendant,                   | :   |
|                              | :   |
| **PHILADELPHIA POLICE**      | :   |
| **DEPARTMENT**               | :   |
| 750 Race Street              | :   |
| Philadelphia, PA 19106       | :   |
|                              | :   |
| Defendant,                   | :   |
|                              | :   |
| **PENNSYLVANIA STATE POLICE**| :   |
| 1800 Elmerton Ave.           | :   |
| Harrisburg, Pa  17110        | :   |
|                              | :   |
| Defendant.                   | :   |

## COMPLAINT

Plaintiff, Augustine Bangura, by and through his undersigned counsel, against the above captioned Defendants, for various tortuous acts including the collective dissemination false and extremely damaging information about Plaintiff, essentially publishing that Plaintiff had been arrested for dui, and that had essentially been responsible for the death of a pedestrian. Further, Plaintiff alleged through this Complaint that certain Defendants violated Plaintiff's constitutional rights as unlawfully arresting and detaining Plaintiff given these facts; Plaintiff submits this Complaint and hereby avers as follows:

## INTRODUCTION

1.      This is a civil action seeking compensatory and non-pecuniary damages based on claims for defamation of character, invasion of privacy and civil rights violations.

## PARTIES

1.      Plaintiff Augustine Bangura (hereinafter referred to as "Plaintiff") is an African American adult individual who resides at 6546 Wheeler Street**,** Philadelphia PA 19142

2.     Upon information and belief, Defendants Philadelphia Media Network, Inc., (hereinafter referred to collectively as "Defendants" or  "Philadelphia Media") is a business corporation registered to conduct business in Pennsylvania with the Department of State for the Commonwealth of Pennsylvania and at all material time periods hereto was the principal and parent company of its subsidiaries, "Philly.com", "The Philadelphia Inquirer", and the "Philadelphia Daily News", its employees, agents, and/or contractors.

3.     At all times relevant hereto, Defendants Philadelphia Media Network, Inc., acted by and through its subsidiaries, "Philly.com", "The Philadelphia Inquirer", and the "Philadelphia Daily News", its employees, agents, and/or contractors.

4.     Upon information and belief, Defendants CBS Broadcasting, Inc., (hereinafter referred to collectively as "Defendants" or "CBS") is a New York business corporation with its principal place of business located at 51 West 52nd Street, New York, NY 10019, with local affiliates around the country, and at all times material hereto was the principal and parent company of: its local affiliate subsidiaries Philadelphia's "KYW-TV" and Harrisburg's "WHP-TV"; its employees; agents; and/or contractors.

5.     At all times relevant hereto, Defendants CBS Broadcasting, Inc., acted by and through its local affiliate subsidiaries Philadelphia's "KYW-TV" and Harrisburg's "WHP-TV"; its employees; agents; and/or contractors.

6.     Upon information and belief, Defendants Fox Television Stations, Inc., (hereinafter referred to collectively as "Defendants" or "FOX") is a New York business corporation with its principal place of business located at 1211 Avenue of the Americas, New York, NY 10036, with local affiliates around the country, and at all times material hereto was the

principal and parent company of: its local affiliate subsidiaries Philadelphia's "WTXF-TV," Harrisburg's "WPMT," and Tampa Bay's "WTVT"; its employees; agents; and/or contractors.

7.     At all times relevant hereto, Defendants Fox Television Stations, Inc., acted by and through its local affiliate subsidiaries Philadelphia's "WTXF-TV," Harrisburg's "WPMT," and Tampa Bay's "WTVT"; its employees; agents; and/or contractors.

8.     Upon information and belief, Defendants  NBCUniversal, Inc., (hereinafter referred to collectively as "Defendants" or "NBC") is a New York business corporation with its principal place of business located at 30 Rockefeller Plaza, New York, NY 10112, with local affiliates around the country, and at all times material hereto was the principal and parent company of: its local affiliate subsidiaries Philadelphia's "WCAU" and Lancaster's "WGAL"; its employees; agents; and/or contractors.

9.     At all times relevant hereto, Defendants NBCUniversal, Inc., acted by and through its local affiliate subsidiaries Philadelphia's "WCAU" and Lancaster's "WGAL"; its employees; agents; and/or contractors.

10.     Upon information and belief, Defendants American Broadcasting Company, Inc., (hereinafter referred to collectively as "Defendants" or "ABC") is a New York business corporation with its principal place of business located at 77 West 66th Street, New York, NY 10023, with local affiliates around the country, and at all times material hereto was the principal and parent company of: its local affiliate subsidiaries Philadelphia's "WPVI-TV," Cincinnati's "WCPO-TV," San Diego's "KGTV," and Bakersfield's "KERO-TV"; its employees; agents; and/or contractors.

11.     At all times relevant hereto, Defendants American Broadcasting Company, Inc., acted by and through its local affiliate subsidiaries Philadelphia's "WPVI-TV," Cincinnati's

"WCPO-TV," San Diego's "KGTV," and Bakersfield's "KERO-TV"; its employees; agents; and/or contractors.

12.     Upon information and belief, Defendants Metrocorp, Inc., (hereinafter referred to collectively as "Defendants" or "Metrocorp") is a business corporation registered to conduct business in Pennsylvania with the Department of State for the Commonwealth of Pennsylvania and at all material time periods hereto was the principal and parent company of its subsidiary "Philadelphia Magazine", its employees, agents, and/or contractors.

13.     At all times relevant hereto, Defendants Metrocorp, Inc., acted by and through its subsidiary "Philadelphia Magazine", its employees, agents, and/or contractors.

14.     Upon information and belief, Defendants Maranatha Broadcasting Company, Inc., (hereinafter referred to collectively as "Defendants" or "Maranatha") is a business corporation registered to conduct business in Pennsylvania with the Department of State for the Commonwealth of Pennsylvania and at all material time periods hereto was the principal and parent company of its subsidiary Allentown's "WFMZ-TV," its employees, agents, and/or contractors.

15.     At all times relevant hereto, Defendants Maranatha Broadcasting Company, Inc., acted by and through its subsidiary Allentown's "WFMZ-TV," Allentown's "WFMZ-TV,"its employees, agents, and/or contractors.

16.     Upon information and belief, Defendants MediaNews Group, (hereinafter referred to collectively as "Defendants" or "MediaNews") is a Colorado business with its principal place of business located at 101 West Colfax Avenue, Suite 1100, Denver, CO 80202 and at all material time periods hereto was the principal and parent company of its subsidiary the Lebanon Daily News, its employees, agents, and/or contractors.

17.     At all times relevant hereto, Defendants MediaNews Group, acted by and through its subsidiary the Lebanon Daily News, its employees, agents, and/or contractors.

18.     Upon information and belief, Defendants Advance Publications, Inc., (hereinafter referred to collectively as "Defendants" or "Advance") is a New York business corporation with its principal place of business located at 950 W Fingerboard Rd, Staten Island, NY, 10305 and at all material time periods hereto was the principal and parent company of: its subsidiaries Harrisburg's "The Patriot-News" and New Jersey's "The Star-Ledger," its employees, agents, and/or contractors.

19.     At all times relevant hereto, Defendants Advance Publications, Inc., acted by and through its subsidiaries Harrisburg's "The Patriot-News" and New Jersey's "The Star-Ledger," its employees, agents, and/or contractors.

20.     Upon information and belief, Defendants Lancaster Newspapers, Inc., (hereinafter referred to collectively as "Defendants" or  "Lancaster") is a business corporation registered to conduct business in Pennsylvania with the Department of State for the Commonwealth of Pennsylvania and at all material time periods hereto was the principal and parent company of its subsidiary, "Lancasteronline.com," its employees, agents, and/or contractors.

21.     At all times relevant hereto, Defendants Lancaster Newspapers, Inc., acted by and through its subsidiary, "Lancasteronline.com," its employees, agents, and/or contractors.

22.     Upon information and belief, Defendants Local Media Group, Inc. (hereinafter referred to collectively as "Defendants" or "Local") is a New York business corporation with its principal place of business located in Middletown, NY and at all material time periods hereto was the principal and parent company of: its subsidiary, the "Pocono Record," its employees, agents, and/or contractors.

23.     At all times relevant hereto, Defendants Local Media Group, Inc. acted by and through its subsidiary the "Pocono Record," its employees, agents, and/or contractors.

24.     Upon information and belief, Defendants The Associated Press, (hereinafter referred to collectively as "Defendants" or "AP") is a New York business with its principal place of business located at 450 West 33rd Street, NY, 10001 and at all material time periods hereto was the principal of its employees, agents, and/or contractors.

25.     At all times relevant hereto, Defendants the Associated Press, acted by and through its employees, agents, and/or contractors.

26.     Upon information and belief, Defendants Time, Inc., (hereinafter referred to collectively as "Defendants" or "Time") is a New York business corporation with its principal place of business located at 1271 Avenue of the Americas, NY, 10020 and at all material time periods hereto was the principal and parent company of "Time" (magazine), its employees, agents, and/or contractors.

27.     At all times relevant hereto, Defendants Time, Inc., acted by and through its subsidiary "Time" (magazine), its employees, agents, and/or contractors.

28.     Upon information and belief, Defendants Daily News, LP, (hereinafter referred to collectively as "Defendants" or "Daily News") is a New York business with its principal place of business located at 4 New York Plaza, NY, 10004 and at all material time periods hereto was the principal and parent company of "The New York Daily News," its employees, agents, and/or contractors.

29.     At all times relevant hereto, Defendants Daily News, LP, acted by and through its employees, agents, and/or contractors of "The New York Daily News."

30.     Upon information and belief, Defendant, the Philadelphia Police Department, (hereinafter referred to "PPD") is a political subdivision and/or agency of Philadelphia, has its principal offices or headquarters located at 750 Race Street, Philadelphia, PA 19103, and at all material time periods hereto was the principal of its employees, agents, and/or contractors.

31.     At all times relevant hereto, Defendant PPD, acted by and through its employees, agents, and/or contractors.

32.     Upon information and belief, Defendants the Pennsylvania State Police, (hereinafter referred to the "PSP") is a political subdivision and/or agency of Pennsylvania, has its principal offices or headquarters located at 1800 Elmerton Ave., Harrisburg, Pa  17110  and at all material time periods hereto was the principal of its employees, agents, and/or contractors

33.     At all times relevant hereto, Defendants PSP, acted by and through its employees, agents, and/or contractors.

34.     Defendants PMN, CBS, Fox, NBC, Metro Corp, Maranatha, ABC, MediaNews, Advance Publications, Lancaster Newspaper, Local Media Group, A.P., Time, and Daily News shall be collectively referred to as the "Media Defendants".

35.     Defendants PSP and PPD shall sometimes be collectively referred to as the "Police Defendants".


## FACTS AND AVERMENTS

36.     Plaintiff incorporates paragraphs 1-35 as if fully set forth herein.

37.     On or about December 7, 2013, Plaintiff was soberly traveling in a vehicle along I-95 South near Philadelphia.

38.     On or about December 7, 2013, Plaintiff was soberly the driver and operator of the vehicle.

39.     As Plaintiff was driving on I-95 South, the vehicle directly ahead of him began swerving between lanes.

40.     Plaintiff at this point was apprehensive of the car swerving, and turned his turn signal on to change lanes and avoid the potential danger of the swerving car.

41.     As Plaintiff began changing lanes, the car in front of him came into the same lane and struck decedent, Adam Herr, sending him into the air towards Plaintiff's vehicle.

42.     Decedent, Adam Herr, then landed on top of Plaintiff's windshield.

43.     The vehicle in front of Plaintiff, who was the first to hit decedent, Adam Herr, fled the scene and never returned.

44.     As there was no damage to the front of Plaintiffs vehicle, and only to his windshield, this indicates Plaintiff had not been the driver to hit the decedent first, and the decedent landed on his car.

45.     Plaintiff, frightened and concerned, was the first to call the Police about the incident.

46.     When the PSP arrived, they began questioning Plaintiff.

47.     As Plaintiff was not under the influence he, although still frightened and concerned, he consented to a blood test and field sobriety tests to be administered by the police.

48.     According to the Police, Plaintiff failed a field sobriety test.

49.     At all times relevant hereto, plaintiff was not under the influence of any drugs or alcohol.

50.     After asking the Police several times whether he was under arrest, Plaintiff was told by the Police that they were taking him to the hospital for blood tests.

51.     Plaintiff voluntarily entered the Police car under the impression that he was not under arrest and was being taken to the hospital for blood tests.

52.     Contrary to the PSP statement, Defendants took Plaintiff to the PPD headquarters.

53.     As they exited the car, Plaintiff asked Defendants twice whether he was under arrest; both times the Defendants answered in the negative.

54.     While in Defendants headquarters, Plaintiff was booked and placed into a cell.

55.     On or about the early hours of December 9, 2013, Plaintiff was released.

56.     At no time relevant to this incident was Plaintiff told he was under arrest, read his Miranda rights, or charged with a crime by the Defendants.

57.     At no time relevant to this incident was a blood test taken from the Plaintiff.

58.     Despite Plaintiff's sobriety and lack of an arrest or charges being filed, Defendants, Pennsylvania State Police, reported to media outlets, including several Defendants, that Plaintiff was under the influence, arrested and charged with the serious crime of homicide by motor vehicle.

59.     Despite Plaintiff's sobriety and lack of an arrest or charges being filed, all Defendant media outlets negligently and erroneously reported that Plaintiff was under the influence, arrested and charged with the serious crime of homicide by motor vehicle.

60.     Despite Plaintiff's sobriety and lack of an arrest or charges being filed, several Defendants erroneously continued to negligently report the same artificial facts regarding the Plaintiff, even after Plaintiff was released.

61.     Again, at no time relevant to this incident was Plaintiff put told he was under arrest, read his Miranda rights, or most importantly charged with a crime.

62.     At no time has any Defendant media outlet retracted or withdrawn their reported claims against the Plaintiff.

63.     As a result of Defendants' erroneous and defamatory reporting, Plaintiff has been adversely affected.

## COUNT I - DEFAMATION

## PLAINTIFF V. PHILADELPHIA MEDIA NETWORK, INC.

64.     Plaintiff incorporates paragraphs 1- 63 as if fully set forth herein.

65.     Defendants, Philadelphia Media, by through its subsidiaries, "Philly.com", "The Philadelphia Inquirer", and the "Philadelphia Daily News", its employees, agents, and/or contractors, published information and accused Plaintiff of being under the influence, arrested, and charged with the serious crime of homicide by motor vehicle.

66.     On two separate occasions, Defendant's subsidiary "Philly.com" posted defaming articles on their website by and through their affiliate local newspapers, "The Philadelphia Inquirer," and the "Philadelphia Daily News," (also subsidiaries of Defendant Philadelphia Media) and their writers.

67.     Plaintiff was released from police custody in the early morning hours of December 9, 2013, without being charged of any crime.

68.     The article on "Philly.com" by a "The Philadelphia Inquirer" writer and employee was posted on December 10, 2013.

69.     The article on "Philly.com" by a "Philadelphia Daily News" writer and employee was posted on December 10, 2013.

70.     Both articles posted on December 10, 2013 were three full days removed from the underlying incident, and one full day removed from Plaintiff being released without being charged.

71.     At no time relevant to this incident was Plaintiff under the influence, told he was under arrest or charged with a crime by the PSP or PPD Defendants.

72.     The reporting and accusations in all relevant articles were false.

73.     The reports and accusations made as stated herein by subsidiaries, employees and /or agents of Defendants were published to others, including friends and relatives of Plaintiff and all viewers or readers of Defendants' news reports.

74.     Plaintiff's friends and relatives understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

75.     All viewers or readers of Defendants' news reports understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

76.     At the time the statements were made concerning Plaintiff, Defendant's subsidiaries, agents or employees knew or should have known that the statements made concerning Plaintiff were untrue.

77.     Plaintiff is not a public figure.

78.     The allegations made by Defendants concerning Plaintiff's "arrest" and charges constitute libel per se.

79.     Defendants in the matter abused any available privilege when their subsidiaries, employees, agents, and/or contractors made false accusations about Plaintiff being charged with

a crime because the allegations were made with reckless disregard for the truth and/or were made by Defendant's agents without using reasonable care to determine the truth of the statements.

80.    Defendants in the matter were grossly negligent by:

    a.   Failing to conduct the proper research and investigate the incident;

    b.   Continuing to report and post unsubstantiated stories after Plaintiff was released;

    c.   Failing to properly run follow up stories with true and correct information;

    d.   Failing to retract their previous false and distorted stories.

81.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has sustained direct and adverse harm.

82.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has been and is greatly injured in his good name, credit and reputation all of which has been to his great detriment and loss.

**WHEREFORE**, Plaintiff Augustine Bangura, by and through his undersigned counsel, demands judgment in his favor and against Defendants and an award of the following:

    a.   compensatory damages and consequential damages;

    b.   attorneys fees and costs; and

    c.   any other relief this Honorable Court deems appropriate under the circumstances.

## COUNT II - DEFAMATION

## PLAINTIFF V. CBS BROADCASTING, INC.

83.    Plaintiff incorporates paragraphs 1- 82 as if fully set forth herein.

84.     Defendants, CBS, by and through its local affiliate subsidiaries, Philadelphia's "KYW-TV" and Harrisburg's "WHP-TV"; its employees; agents; and/or contractors, published information and accused Plaintiff of being under the influence, arrested, and charged with the serious crime of homicide by motor vehicle.

85.     On separate occasions, Defendants' local affiliate subsidiaries, Philadelphia's "KYW-TV" and Harrisburg's "WHP-TV," by and through their writers and employees posted defaming articles on their websites.

86.     The original incident in this matter occurred on December 7, 2013.

87.     The article by a writer and employee of Philadelphia's "KYW-TV" was posted on its website on December 8, 2013 at 10:00 p.m.

88.     Philadelphia's "KYW-TV" article was posted one full day removed from the underlying incident.

89.     At that point and time Plaintiff had not been legally arrested or charged with any crime.

90.     At no time relevant to this incident was Plaintiff told he was under arrest, read his Miranda rights, or charged with a crime by the PSP or PPD Defendants.

91.     The article on Harrisburg's "WHP-TV" website was posted on with no reference to a time or date.

92.     The reporting and accusations in all relevant articles were false.

93.     The reports and accusations made as stated herein by subsidiaries, employees and /or agents of Defendants were published to others, including friends and relatives of Plaintiff and all viewers or readers of Defendants' news reports.

94.     Plaintiff's friends and relatives understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

95.     All viewers or readers of Defendants' news reports understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

96.     At the time the statements were made concerning Plaintiff, Defendant's subsidiaries, agents or employees knew or should have known that the statements made concerning Plaintiff were untrue.

97.     Plaintiff is not a public figure.

98.     The allegations made by Defendants concerning Plaintiff's "arrest" and charges constitute libel per se.

99.     Defendants in the matter abused any available privilege when their subsidiaries, employees, agents, and/or contractors made false accusations about Plaintiff being charged with a crime because the allegations were made with reckless disregard for the truth and/or were made by Defendant's agents without using reasonable care to determine the truth of the statements.

100.    Defendants in the matter were grossly negligent by:

    a.  Failing to conduct the proper research and investigate the incident;

    b.  Continuing to report and post unsubstantiated stories after Plaintiff was released;

    c.  Failing to properly run follow up stories with true and correct information;

    d.  Failing to retract their previous false and distorted stories.

101.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has sustained direct and adverse harm.

102.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has been and is greatly injured in his good name, credit and reputation all of which has been to his great detriment and loss.

**WHEREFORE**, Plaintiff Augustine Bangura, by and through his undersigned counsel, demands judgment in his favor and against Defendants and an award of the following:

  a.   compensatory damages and consequential damages;

  b.   attorneys fees and costs; and

  c.   any other relief this Honorable Court deems appropriate under the circumstances.

## COUNT III - DEFAMATION

## PLAINTIFF V. FOX TELEVISION STATIONS, INC.

103.    Plaintiff incorporates paragraphs 1- 102 as if fully set forth herein.

104.    Defendants, FOX, by and through its local affiliate subsidiaries Philadelphia's "WTXF-TV," Harrisburg's "WPMT," and Tampa Bay's "WTVT"; its employees; agents; and/or contractors, published information and accused Plaintiff of being under the influence, arrested, and charged with the serious crime of homicide by motor vehicle.

105.    On separate occasions, Defendants' local affiliate subsidiaries, Philadelphia's "WTXF-TV," Harrisburg's "WPMT," and Tampa Bay's "WTVT," by and through their writers and employees posted defaming articles on their websites.

106.   Plaintiff was released from police custody in the early morning hours of December 9, 2013, without being charged of any crime.

107.   An article was posted on Philadelphia's "WTXF-TV" website for the first time on December 8, 2013 at 11:30 a.m.

108.   At that point and time Plaintiff had not been under the influence, legally arrested or charged with any crime.

109.   The article posted on Philadelphia's "WTXF-TV" website was then updated on December 22, 2013 at 11:30 a.m.

110.   This updated post on Philadelphia's "WTXF-TV" is a full fifteen (15) days removed from the underlying incident.

111.   In this updated version, no facts are changed or retracted, and continued to state that Plaintiff was driving under the influence.

112.   At no time relevant to this incident was Plaintiff under the influence, told he was under arrest, or charged with a crime by the PSP or PPD Defendants.

113.   An article was posted on Tampa Bay's "WTVT" website for the first time on December 8, 2013 at 11:30 a.m.

114.   At that point and time Plaintiff had not been under the influence, legally arrested or charged with any crime.

115.   The article posted on Tampa Bay's "WTVT" website was then updated on December 22, 2013 at 11:30 a.m.

116.   This updated post on Tampa Bay's "WTVT" is a full fifteen (15) days removed from the underlying incident.

117.    In this updated version, no facts are changed or retracted, and continued to state that Plaintiff was driving under the influence.

118.    At no time relevant to this incident was Plaintiff under the influence, told he was under arrest, or charged with a crime by the PSP or PPD Defendants.

119.    An article by a writer and employee of Harrisburg's "WPMT" was posted on its website on December 9, 2013.

120.    Harrisburg's "WPMT" article was posted two full days removed from the underlying incident, and after Plaintiff had been released without being charged.

121.    At no time relevant to this incident was Plaintiff under the influence, told he was under arrest, read his Miranda rights, or charged with a crime by the PSP or PPD Defendants.

122.    The reporting and accusations in all relevant articles were false.

123.    The reports and accusations made as stated herein by subsidiaries, employees and /or agents of Defendants were published to others, including friends and relatives of Plaintiff and all viewers or readers of Defendants' news reports.

124.    Plaintiff's friends and relatives understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

125.    All viewers or readers of Defendants' news reports understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

126.    At the time the statements were made concerning Plaintiff, Defendant's subsidiaries, agents or employees knew or should have known that the statements made concerning Plaintiff were untrue.

127. Plaintiff is not a public figure.

128. The allegations made by Defendants concerning Plaintiff's "arrest" and charges constitute libel per se.

129. Defendants in the matter abused any available privilege when their subsidiaries, employees, agents, and/or contractors made false accusations about Plaintiff being charged with a crime because the allegations were made with reckless disregard for the truth and/or were made by Defendant's agents without using reasonable care to determine the truth of the statements.

130. Defendants in the matter were grossly negligent by:

    a. Failing to conduct the proper research and investigate the incident;

    b. Continuing to report and post unsubstantiated stories after Plaintiff was released;

    c. Updating the story without changing fabricated facts;

    d. Failing to properly run follow up stories with true and correct information;

    e. Failing to retract their previous false and distorted stories.

131. As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has sustained direct and adverse harm.

132. As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has been and is greatly injured in his good name, credit and reputation all of which has been to his great detriment and loss.

**WHEREFORE**, Plaintiff Augustine Bangura, by and through his undersigned counsel, demands judgment in his favor and against Defendants and an award of the following:

    a. compensatory damages and consequential damages;

    b. attorneys fees and costs; and

   c.   any other relief this Honorable Court deems appropriate under the
        circumstances.


**COUNT IV - DEFAMATION**

**PLAINTIFF V. NBCUNIVERSAL, INC.**

133.   Plaintiff incorporates paragraphs 1- 132 as if fully set forth herein.

134.   Defendants, NBC, by and through its local affiliate subsidiaries, Philadelphia's "WCAU" and Lancaster's "WGAL," its employees, agents, and/or contractors published information and accused Plaintiff of being: under the influence, arrested, and charged with the serious crime of homicide by motor vehicle.

135.   On separate occasions, Defendants' local affiliate subsidiaries, Philadelphia's "WCAU" and Lancaster's "WGAL," by and through their writers and employees posted defaming articles on their websites.

136.   Plaintiff was released from police custody in the early morning hours of December 9, 2013, without being charged of any crime.

137.   An article was posted on Philadelphia's "WCAU" website for the first time in the morning of December 9, 2013.

138.   Philadelphia's "WCAU" article was posted two full days removed from the underlying incident, and after Plaintiff had been released without being charged.

139.   The article posted on Philadelphia's "WCAU" website was then updated on December 9, 2013 at 11:38 a.m.

140.   In this updated version, no facts are changed or retracted, and continued to state that Plaintiff was driving under the influence, and charged with a crime.

141.    At no time relevant to this incident was Plaintiff under the influence, told he was under arrest, or charged with a crime by the Defendants.

142.    An article was posted on Lancaster's "WGAL" website on December 9, 2013 at 9:47 a.m.

143.    Lancaster's "WGAL" article was posted two full days removed from the underlying incident, and hours after Plaintiff had been released without being charged.

144.    At no time relevant to this incident was Plaintiff under the influence, told he was under arrest, or charged with a crime by the PSP or PPD Defendants.

145.    The reporting and accusations in all relevant articles were false.

146.    The reports and accusations made as stated herein by subsidiaries, employees and /or agents of Defendants were published to others, including friends and relatives of Plaintiff and all viewers or readers of Defendants' news reports.

147.    Plaintiff's friends and relatives understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

148.    All viewers or readers of Defendants' news reports understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

149.    At the time the statements were made concerning Plaintiff, Defendant's subsidiaries, agents or employees knew or should have known that the statements made concerning Plaintiff were untrue.

150.    Plaintiff is not a public figure.

151.    The allegations made by Defendants concerning Plaintiff's "arrest" and charges constitute libel per se.

152.    Defendants in the matter abused any available privilege when their subsidiaries, employees, agents, and/or contractors made false accusations about Plaintiff being charged with a crime because the allegations were made with reckless disregard for the truth and/or were made by Defendant's agents without using reasonable care to determine the truth of the statements.

153.    Defendants in the matter were grossly negligent by:

    a.   Failing to conduct the proper research and investigate the incident;

    b.   Continuing to report and post unsubstantiated stories after Plaintiff was released;

    c.   Updating the story without changing fabricated facts;

    d.   Failing to properly run follow up stories with true and correct information;

    e.   Failing to retract their previous false and distorted stories.

154.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has sustained direct and adverse harm.

155.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has been and is greatly injured in his good name, credit and reputation all of which has been to his great detriment and loss.

**WHEREFORE**, Plaintiff Augustine Bangura, by and through his undersigned counsel, demands judgment in his favor and against Defendants and an award of the following:

    a.   compensatory damages and consequential damages;

    b.   attorneys fees and costs; and

c.   any other relief this Honorable Court deems appropriate under the
circumstances.

## COUNT V - DEFAMATION

## PLAINTIFF V. AMERICAN BROADCASTING COMPANY, INC.

156.    Plaintiff incorporates paragraphs 1- 155 as if fully set forth herein.

157.    Defendants, ABC, by and through its local affiliate subsidiaries, Philadelphia's
"WPVI-TV," Cincinnati's "WCPO-TV," San Diego's "KGTV," and Bakersfield's "KERO-TV"
its employees, agents, and/or contractors published information and accused Plaintiff of being:
under the influence, arrested, and charged with the serious crime of homicide by motor vehicle.

158.    On separate occasions, Defendants' local affiliate subsidiaries, Philadelphia's
"WPVI-TV," Cincinnati's "WCPO-TV," San Diego's "KGTV," and Bakersfield's "KERO-TV"
by and through their writers and employees posted defaming articles on their websites.

159.    The original incident in this matter occurred on December 7, 2013.

160.    An article was posted on Philadelphia's "WPVI-TV" website on December 8,
2013 at 6:55 a.m.

161.    Philadelphia's "WPVI-TV" article asserted that Plaintiff was under the influence,
arrested and charged with a crime.

162.    At that point and time Plaintiff had not been under the influence, legally arrested
or charged with any crime.

163.    At no time relevant to this incident was Plaintiff under the influence, told he was
under arrest, or charged with a crime by the PSP or PPD Defendants.

164.    An article was posted on San Diego's "KGTV" website on December 9, 2013 at 6:38 a.m.

165.    San Diego's "KGTV" article was posted two full days removed from the underlying incident, and hours after Plaintiff had been released without being charged.

166.    The article posted on San Diego's "KGTV" website was then updated on December 9, 2013 at 7:40 a.m.

167.    In this updated version, no facts are changed or retracted, and continued to state that Plaintiff was driving under the influence, and charged with a crime.

168.    At no time relevant to this incident was Plaintiff under the influence, told he was under arrest, read his Miranda rights, or charged with a crime by the Defendants.

169.    An article was posted on Bakersfield's "KERO-TV" website on December 9, 2013 at 6:38 a.m.

170.    Bakersfield's "KERO-TV" article was posted two full days removed from the underlying incident, and hours after Plaintiff had been released without being charged.

171.    The article posted on Bakersfield's "KERO-TV" website was then updated on December 9, 2013 at 7:40 a.m.

172.    In this updated version, no facts are changed or retracted, and continued to state that Plaintiff was driving under the influence, and charged with a crime.

173.    At no time relevant to this incident was Plaintiff under the influence, told he was under arrest, read his Miranda rights, or charged with a crime by the Defendants.

174.    An article was posted on Cincinnati's "WCPO-TV" website on December 9, 2013 at 8:22 a.m.

175.   Cincinnati's "WCPO-TV" article asserted that Plaintiff was under the influence, arrested and charged with a crime.

176.   Cincinnati's "WCPO-TV" article was posted two full days removed from the underlying incident, and hours after Plaintiff had been released without being charged.

177.   At no time relevant to this incident was Plaintiff under the influence, told he was under arrest, read his Miranda rights, or charged with a crime by the PSP or PPD Defendants.

178.   The reporting and accusations in all relevant articles were false.

179.   The reports and accusations made as stated herein by subsidiaries, employees and /or agents of Defendants were published to others, including friends and relatives of Plaintiff and all viewers or readers of Defendants' news reports.

180.   Plaintiff's friends and relatives understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

181.   All viewers or readers of Defendants' news reports understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

182.   At the time the statements were made concerning Plaintiff, Defendant's subsidiaries, agents or employees knew or should have known that the statements made concerning Plaintiff were untrue.

183.   Plaintiff is not a public figure.

184.   The allegations made by Defendants concerning Plaintiff's "arrest" and charges constitute libel per se.

185.    Defendants in the matter abused any available privilege when their subsidiaries, employees, agents, and/or contractors made false accusations about Plaintiff being charged with a crime because the allegations were made with reckless disregard for the truth and/or were made by Defendant's agents without using reasonable care to determine the truth of the statements.

186.    Defendants in the matter were grossly negligent by:

    a.    Failing to conduct the proper research and investigate the incident;

    b.    Continuing to report and post unsubstantiated stories after Plaintiff was released;

    c.    Updating the story without changing fabricated facts;

    d.    Failing to properly run follow up stories with true and correct information;

    e.    Failing to retract their previous false and distorted stories.

187.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has sustained direct and adverse harm.

188.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has been and is greatly injured in his good name, credit and reputation all of which has been to his great detriment and loss.

**WHEREFORE**, Plaintiff Augustine Bangura, by and through his undersigned counsel, demands judgment in his favor and against Defendants and an award of the following:

    d.    compensatory damages and consequential damages;

    e.    attorneys fees and costs; and

    f.    any other relief this Honorable Court deems appropriate under the circumstances.

## COUNT VI - DEFAMATION

## PLAINTIFF V. DEFENDANTS METROCORP, INC.

189.  Plaintiff incorporates paragraphs 1- 188 as if fully set forth herein.

190.  Defendants, Metrocorp, by and through its subsidiary "Philadelphia" (magazine), its employees, agents, and/or contractors published information and accused Plaintiff of being: under the influence, arrested, and charged with the serious crime of homicide by motor vehicle.

191.  Defendants' subsidiary "Philadelphia" (magazine), by and though its employees, agents, and/or contractors posted a defaming article on their website.

192.  Plaintiff was released from police custody in the early morning hours of December 9, 2013, without being charged of any crime.

193.  An article was posted on "Philadelphia's" (magazine) website on December 9, 2013 at 10:50 a.m.

194.  "Philadelphia's" article was posted two full days removed from the underlying incident, and hours after Plaintiff had been released without being charged.

195.  At no time relevant to this incident was Plaintiff under the influence, told he was under arrest, or charged with a crime by the PSP or PPD Defendants.

196.  The reporting and accusations in the article were false.

197.  The reports and accusations made as stated herein by subsidiaries, employees and /or agents of Defendants were published to others, including friends and relatives of Plaintiff and all viewers or readers of Defendants' news reports.

198.  Plaintiff's friends and relatives understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

199.   All viewers or readers of Defendants' news reports understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

200.   At the time the statements were made concerning Plaintiff, Defendant's subsidiaries, agents or employees knew or should have known that the statements made concerning Plaintiff were untrue.

201.   Plaintiff is not a public figure.

202.   The allegations made by Defendants concerning Plaintiff's "arrest" and charges constitute libel per se.

203.   Defendants in the matter abused any available privilege when their subsidiaries, employees, agents, and/or contractors made false accusations about Plaintiff being charged with a crime because the allegations were made with reckless disregard for the truth and/or were made by Defendant's agents without using reasonable care to determine the truth of the statements.

204.   Defendants in the matter were grossly negligent by:

   a.   Failing to conduct the proper research and investigate the incident;

   b.   Continuing to report and post unsubstantiated stories after Plaintiff was released;

   c.   Updating the story without changing fabricated facts;

   d.   Failing to properly run follow up stories with true and correct information;

   e.   Failing to retract their previous false and distorted stories.

205.   As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has sustained direct and adverse harm.

206.     As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has been and is greatly injured in his good name, credit and reputation all of which has been to his great detriment and loss.

**WHEREFORE**, Plaintiff Augustine Bangura, by and through his undersigned counsel, demands judgment in his favor and against Defendants and an award of the following:

    a.   compensatory damages and consequential damages;

    b.   attorneys fees and costs; and

    c.   any other relief this Honorable Court deems appropriate under the circumstances.

<u>COUNT VII - DEFAMATION</u>

<u>PLAINTIFF V. MARANATHA BROADCASTING COMPANY, INC.</u>

207.     Plaintiff incorporates paragraphs 1- 206 as if fully set forth herein.

208.     Defendants, Maranatha, by and through its subsidiary Allentown's "WFMZ-TV", its employees, agents, and/or contractors published information and accused Plaintiff of being: under the influence, arrested, and charged with the serious crime of homicide by motor vehicle.

209.     Defendants' subsidiary Allentown's "WFMZ-TV", by and though its employees, agents, and/or contractors posted a defaming article on their website.

210.     The original incident in this matter occurred on December 7, 2013, and Plaintiff was released from police custody in the early morning hours of December 9, 2013, without being charged of any crime.

211.     An article was posted on Allentown's "WFMZ-TV", website for the first time on December 8, 2013 at 1:14 p.m.

212. Allentown's "WFMZ-TV" article was posted one day removed from the underlying incident.

213. At that point and time Plaintiff had not been under the influence, legally arrested or charged with any crime.

214. The article posted on Allentown's "WFMZ-TV" website was then updated on December 9, 2013 at 5:13 a.m.

215. Allentown's "WFMZ-TV" updated article was posted after Plaintiff had been released without being charged.

216. In this updated version, no facts are changed or retracted, and continued to state that Plaintiff was driving under the influence, and charged with a crime.

217. At no time relevant to this incident was Plaintiff under the influence, told he was under arrest, or charged with a crime by the PSP or PPD Defendants.

218. The reporting and accusations in the article were false.

219. The reports and accusations made as stated herein by subsidiaries, employees and /or agents of Defendants were published to others, including friends and relatives of Plaintiff and all viewers or readers of Defendants' news reports.

220. Plaintiff's friends and relatives understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

221. All viewers or readers of Defendants' news reports understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

222.     At the time the statements were made concerning Plaintiff, Defendant's subsidiaries, agents or employees knew or should have known that the statements made concerning Plaintiff were untrue.

223.     Plaintiff is not a public figure.

224.     The allegations made by Defendants concerning Plaintiff's "arrest" and charges constitute libel per se.

225.     Defendants in the matter abused any available privilege when their subsidiaries, employees, agents, and/or contractors made false accusations about Plaintiff being charged with a crime because the allegations were made with reckless disregard for the truth and/or were made by Defendant's agents without using reasonable care to determine the truth of the statements.

226.     Defendants in the matter were grossly negligent by:

   a.   Failing to conduct the proper research and investigate the incident;

   b.   Continuing to report and post unsubstantiated stories after Plaintiff was released;

   c.   Updating the story without changing fabricated facts;

   d.   Failing to properly run follow up stories with true and correct information;

   e.   Failing to retract their previous false and distorted stories.

227.     As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has sustained direct and adverse harm.

228.     As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has been and is greatly injured in his good name, credit and reputation all of which has been to his great detriment and loss.

**WHEREFORE**, Plaintiff Augustine Bangura, by and through his undersigned counsel, demands judgment in his favor and against Defendants and an award of the following:

      a.   compensatory damages and consequential damages;

      b.   attorneys fees and costs; and

      c.   any other relief this Honorable Court deems appropriate under the circumstances.

## COUNT VIII - DEFAMATION

## PLAINTIFF V. MEDIANEWS GROUP

229.    Plaintiff incorporates paragraphs 1- 228 as if fully set forth herein.

230.    Defendants, MediaNews, by and through its subsidiary the "Lebanon Daily News," its employees, agents, and/or contractors published information and accused Plaintiff of being: under the influence, arrested, and charged with the serious crime of homicide by motor vehicle.

231.    Defendant's subsidiary "Lebanon Daily News," by and though its employees, agents, and/or contractors posted a defaming article on their website.

232.    The original incident in this matter occurred on December 7, 2013, and Plaintiff was released from police custody in the early morning hours of December 9, 2013, without being charged of any crime.

233.    An article was posted on "Lebanon Daily News'," website on December 9, 2013 at 10:49 a.m.

234.    "Lebanon Daily News'," article was posted two full days removed from the underlying incident, and hours after Plaintiff had been released without being charged.

235.    At no time relevant to this incident was Plaintiff under the influence, told he was under arrest, or charged with a crime by the PSP or PPD Defendants.

236.    The reporting and accusations in the article were false.

237.    The reports and accusations made as stated herein by subsidiaries, employees and /or agents of Defendants were published to others, including friends and relatives of Plaintiff and all viewers or readers of Defendants' news reports.

238.    Plaintiff's friends and relatives understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

239.    All viewers or readers of Defendants' news reports understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

240.    At the time the statements were made concerning Plaintiff, Defendant's subsidiaries, agents or employees knew or should have known that the statements made concerning Plaintiff were untrue.

241.    Plaintiff is not a public figure.

242.    The allegations made by Defendants concerning Plaintiff's "arrest" and charges constitute libel per se.

243.    Defendants in the matter abused any available privilege when their subsidiaries, employees, agents, and/or contractors made false accusations about Plaintiff being charged with a crime because the allegations were made with reckless disregard for the truth and/or were made by Defendant's agents without using reasonable care to determine the truth of the statements.

244.    Defendants in the matter were grossly negligent by:

    a.   Failing to conduct the proper research and investigate the incident;

    b.   Continuing to report and post unsubstantiated stories after Plaintiff was released;

    c.   Updating the story without changing fabricated facts;

    d.   Failing to properly run follow up stories with true and correct information;

    e.   Failing to retract their previous false and distorted stories.

245.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has sustained direct and adverse harm.

246.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has been and is greatly injured in his good name, credit and reputation all of which has been to his great detriment and loss.

**WHEREFORE**, Plaintiff Augustine Bangura, by and through his undersigned counsel, demands judgment in his favor and against Defendants and an award of the following:

    a.   compensatory damages and consequential damages;

    b.   attorneys fees and costs; and

    c.   any other relief this Honorable Court deems appropriate under the circumstances.

## COUNT IV - DEFAMATION

## PLAINTIFF V. ADVANCE PUBLICATIONS, INC.

247.    Plaintiff incorporates paragraphs 1- 246 as if fully set forth herein.

248.    Defendants, Advance, by and through its subsidiaries, Harrisburg's "The Patriot-News" and New Jersey's "The Star-Ledger," its employees, agents, and/or contractors  its

employees, agents, and/or contractors published information and accused Plaintiff of being: under the influence, arrested, and charged with the serious crime of homicide by motor vehicle.

249.    Defendant's subsidiaries Harrisburg's "The Patriot-News" and New Jersey's "The Star-Ledger," its employees, agents, and/or contractors by and though its employees, agents, and/or contractors posted a defaming articles on their website.

250.    The original incident in this matter occurred on December 7, 2013, and Plaintiff was released from police custody in the early morning hours of December 9, 2013, without being charged of any crime.

251.    An article was posted by Harrisburg's "The Patriot-News" via their website "Pennlive.com"for the first time on December 9, 2013 at 8:28 a.m.

252.    Harrisburg's "The Patriot-News" article was posted two full days removed from the underlying incident, and several hours after Plaintiff had been released without being charged.

253.    At no time relevant to this incident was Plaintiff under the influence, told he was under arrest, or charged with a crime by the Defendants.

254.    The article posted on Harrisburg's "The Patriot-News" website was then updated on December 9, 8:53 a.m.

255.    In this updated version, no facts are changed or retracted, and continued to state that Plaintiff was driving under the influence, and charged with a crime by the PSP or PPD Defendants.

256.    At no time relevant to this incident was Plaintiff under the influence, told he was under arrest, or charged with a crime by the PSP of PPD Defendants.

257.     An article was posted by New Jersey's "The Star-Ledger" via their website "NJ.com" on December 9, 2013 at 11:41 a.m.

258.     New Jersey's "The Star-Ledger" article was posted two full days removed from the underlying incident, and several hours after Plaintiff had been released without being charged.

259.     At no time relevant to this incident was Plaintiff under the influence, told he was under arrest, or charged with a crime by the PSP or PPD Defendants.

260.     The reporting and accusations in all relevant articles were false.

261.     The reports and accusations made as stated herein by subsidiaries, employees and /or agents of Defendants were published to others, including friends and relatives of Plaintiff and all viewers or readers of Defendants' news reports.

262.     Plaintiff's friends and relatives understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

263.     All viewers or readers of Defendants' news reports understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

264.     At the time the statements were made concerning Plaintiff, Defendant's subsidiaries, agents or employees knew or should have known that the statements made concerning Plaintiff were untrue.

265.     Plaintiff is not a public figure.

266.     The allegations made by Defendants concerning Plaintiff's "arrest" and charges constitute libel per se.

267.    Defendants in the matter abused any available privilege when their subsidiaries, employees, agents, and/or contractors made false accusations about Plaintiff being charged with a crime because the allegations were made with reckless disregard for the truth and/or were made by Defendant's agents without using reasonable care to determine the truth of the statements.

268.    Defendants in the matter were grossly negligent by:

    a.   Failing to conduct the proper research and investigate the incident;

    b.   Continuing to report and post unsubstantiated stories after Plaintiff was released;

    c.   Updating the story without changing fabricated facts;

    d.   Failing to properly run follow up stories with true and correct information;

    e.   Failing to retract their previous false and distorted stories.

269.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has sustained direct and adverse harm.

270.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has been and is greatly injured in his good name, credit and reputation all of which has been to his great detriment and loss.

**WHEREFORE**, Plaintiff Augustine Bangura, by and through his undersigned counsel, demands judgment in his favor and against Defendants and an award of the following:

    a.   compensatory damages and consequential damages;

    b.   attorneys fees and costs; and

    c.   any other relief this Honorable Court deems appropriate under the circumstances.

## COUNT X - DEFAMATION

## PLAINITFF V. LANCASTER NEWSPAPERS, INC.

271.     Plaintiff incorporates paragraphs 1- 270 as if fully set forth herein.

272.     Defendants, Lancaster, by and through its subsidiary, "Lancasteronline.com," its employees, agents, and/or contractors published information and accused Plaintiff of being: under the influence, arrested, and charged with the serious crime of homicide by motor vehicle.

273.     Defendant's subsidiary, "Lancasteronline.com," by and though its employees, agents, and/or contractors posted a defaming article on their website.

274.     The original incident in this matter occurred on December 7, 2013, and Plaintiff was released from police custody in the early morning hours of December 9, 2013, without being charged of any crime.

275.     An article was posted on "Lancasteronline.com" for the first time on December 11, 2013 at 5:39 p.m.

276.     "Lancasteronline.com's, article was posted four full days removed from the underlying incident, and two full days after Plaintiff had been released without being charged.

277.     At no time relevant to this incident was Plaintiff under the influence, told he was under arrest, read his Miranda rights, or charged with a crime by the Defendants.

278.     The article posted on Lancasteronline.com's website was then updated on January 8, 2014 at 2:55 p.m.

279.     Lancasteronline.com's, article was update one full month removed from the underlying incident.

280.    In this updated version, no facts are changed or retracted, and continued to state that Plaintiff was driving under the influence, and charged with a crime.

281.    At no time relevant to this incident was Plaintiff under the influence, told he was under arrest, read his Miranda rights, or charged with a crime by the PSP or PPD Defendants.

282.    The reporting and accusations in the article were false.

283.    The reports and accusations made as stated herein by subsidiaries, employees and /or agents of Defendants were published to others, including friends and relatives of Plaintiff and all viewers or readers of Defendants' news reports.

284.    Plaintiff's friends and relatives understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

285.    All viewers or readers of Defendants' news reports understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

286.    At the time the statements were made concerning Plaintiff, Defendant's subsidiaries, agents or employees knew or should have known that the statements made concerning Plaintiff were untrue.

287.    Plaintiff is not a public figure.

288.    The allegations made by Defendants concerning Plaintiff's "arrest" and charges constitute libel per se.

289.    Defendants in the matter abused any available privilege when their subsidiaries, employees, agents, and/or contractors made false accusations about Plaintiff being charged with

a crime because the allegations were made with reckless disregard for the truth and/or were made by Defendant's agents without using reasonable care to determine the truth of the statements.

290.    Defendants in the matter were grossly negligent by:

    a.   Failing to conduct the proper research and investigate the incident;

    b.   Continuing to report and post unsubstantiated stories after Plaintiff was released;

    c.   Updating the story without changing fabricated facts;

    d.   Failing to properly run follow up stories with true and correct information;

    e.   Failing to retract their previous false and distorted stories.

291.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has sustained direct and adverse harm.

292.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has been and is greatly injured in his good name, credit and reputation all of which has been to his great detriment and loss.

**WHEREFORE**, Plaintiff Augustine Bangura, by and through his undersigned counsel, demands judgment in his favor and against Defendants and an award of the following:

    a.   compensatory damages and consequential damages;

    b.   attorneys fees and costs; and

    c.   any other relief this Honorable Court deems appropriate under the circumstances.

## COUNT XI - DEFAMATION

## PLAINTIFF V. LOCAL MEDIA GROUP, INC.

293.    Plaintiff incorporates paragraphs 1- 292 as if fully set forth herein.

294.    Defendants, Local Media, by and through its subsidiary the "Pocono Record," its employees, agents, and/or contractors published information and accused Plaintiff of being: under the influence, arrested, and charged with the serious crime of homicide by motor vehicle.

295.    Defendant's subsidiary the "Pocono Record," by and though its employees, agents, and/or contractors posted a defaming article on their website.

296.    The original incident in this matter occurred on December 7, 2013, and Plaintiff was released from police custody in the early morning hours of December 9, 2013, without being charged of any crime.

297.    An article was posted on the "Pocono Record's" website on December 10, 2013 at 12:00 p.m.

298.    The article posted on December 10, 2013 was three full days removed from the underlying incident, and one full day removed from Plaintiff being released without being charged.

299.    At no time relevant to this incident was Plaintiff told he was under arrest, or charged with a crime by the PSP or PPD Defendants.

300.    The reporting and accusations in the article were false.

301.    The reports and accusations made as stated herein by subsidiaries, employees and /or agents of Defendants were published to others, including friends and relatives of Plaintiff and all viewers or readers of Defendants' news reports.

302. Plaintiff's friends and relatives understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

303. All viewers or readers of Defendants' news reports understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

304. At the time the statements were made concerning Plaintiff, Defendant's subsidiaries, agents or employees knew or should have known that the statements made concerning Plaintiff were untrue.

305. Plaintiff is not a public figure.

306. The allegations made by Defendants concerning Plaintiff's "arrest" and charges constitute libel per se.

307. Defendants in the matter abused any available privilege when their subsidiaries, employees, agents, and/or contractors made false accusations about Plaintiff being charged with a crime because the allegations were made with reckless disregard for the truth and/or were made by Defendant's agents without using reasonable care to determine the truth of the statements.

308. Defendants in the matter were grossly negligent by:

    a. Failing to conduct the proper research and investigate the incident;

    b. Continuing to report and post unsubstantiated stories after Plaintiff was released;

    c. Failing to properly run follow up stories with true and correct information;

    d. Failing to retract their previous false and distorted stories.

309.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has sustained direct and adverse harm.

310.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has been and is greatly injured in his good name, credit and reputation all of which has been to his great detriment and loss.

**WHEREFORE**, Plaintiff Augustine Bangura, by and through his undersigned counsel, demands judgment in his favor and against Defendants and an award of the following:

      a.   compensatory damages and consequential damages;

      b.   attorneys fees and costs; and

      c.   any other relief this Honorable Court deems appropriate under the circumstances.

## COUNT XII - DEFAMATION

## PLAINTIFF V. THE ASSOCIATED PRESS

311.    Plaintiff incorporates paragraphs 1- 310 as if fully set forth herein.

312.    Defendant, AP by and through its employees, agents, and/or contractors published information and accused Plaintiff of being: under the influence, arrested, and charged with the serious crime of homicide by motor vehicle.

313.    Defendant by and through its employees, agents, and/or contractors posted a defaming article on their website.

314.    The original incident in this matter occurred on December 7, 2013, and Plaintiff was released from police custody in the early morning hours of December 9, 2013, without being charged of any crime.

315.    The Associated Press began circulating a news wire on the morning of December 9, 2013, which was eventually picked up and re-circulated and cited by several named Defendants of Plaintiff's Complaint.

316.    The wire circulated on December 9, 2013 was two full days removed from the underlying incident, and after Plaintiff was released without being charged.

317.    At no time relevant to this incident was Plaintiff told he was under arrest, read his Miranda rights, or charged with a crime by the PSP or PPD Defendants

318.    The reporting and accusations in the article were false.

319.    The reports and accusations made as stated herein by subsidiaries, employees and /or agents of Defendants were published to others, including friends and relatives of Plaintiff and all viewers or readers of Defendants' news reports.

320.    Plaintiff's friends and relatives understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

321.    All viewers or readers of Defendants' news reports understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

322.    At the time the statements were made concerning Plaintiff, Defendant's subsidiaries, agents or employees knew or should have known that the statements made concerning Plaintiff were untrue.

323.    Plaintiff is not a public figure.

324.    The allegations made by Defendants concerning Plaintiff's "arrest" and charges constitute libel per se.

325.    Defendants in the matter abused any available privilege when their subsidiaries, employees, agents, and/or contractors made false accusations about Plaintiff being charged with a crime because the allegations were made with reckless disregard for the truth and/or were made by Defendant's agents without using reasonable care to determine the truth of the statements.

326.    Defendants in the matter were grossly negligent by:

a.  Failing to conduct the proper research and investigate the incident;

b.  Continuing to report and post unsubstantiated stories after Plaintiff was released;

c.  Failing to properly run follow up stories with true and correct information;

d.  Failing to retract their previous false and distorted stories.

327.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has sustained direct and adverse harm.

328.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has been and is greatly injured in his good name, credit and reputation all of which has been to his great detriment and loss.

**WHEREFORE**, Plaintiff Augustine Bangura, by and through his undersigned counsel, demands judgment in his favor and against Defendants and an award of the following:

a.  compensatory damages and consequential damages;

b.  attorneys fees and costs; and

c.  any other relief this Honorable Court deems appropriate under the circumstances.

## COUNT XIII - DEFAMATION

## PLAINTIFF V. TIME, INC.

329.     Plaintiff incorporates paragraphs 1- 328 as if fully set forth herein.

330.     Defendants, Time, by and through its subsidiary "Time" (magazine)," its

employees, agents, and/or contractors published information and accused Plaintiff of being:

under the influence, arrested, and charged with the serious crime of homicide by motor vehicle.

331.     Defendant's subsidiary "Time" (magazine)," by and though its employees, agents,

and/or contractors posted a defaming article on their website.

332.     The original incident in this matter occurred on December 7, 2013, and Plaintiff

was released from police custody in the early morning hours of December 9, 2013, without being

charged of any crime.

333.     An article was posted on the "Time's" (magazine) website on December 9, 2013.

334.     The article posted on December 9, 2013 was two full days removed from the

underlying incident, and after Plaintiff was released without being charged.

335.     At no time relevant to this incident was Plaintiff told he was under arrest, read his

Miranda rights, or charged with a crime by the PSP or PPD Defendants

336.     The reporting and accusations in the article were false.

337.     The reports and accusations made as stated herein by subsidiaries, employees and

/or agents of Defendants were published to others, including friends and relatives of Plaintiff and

all viewers or readers of Defendants' news reports.

338.     Plaintiff's friends and relatives understood the allegations made by subsidiaries,

employees, agents, and/or contractors of Defendants and understood the meaning of the false

reports and accusations made.

339.    All viewers or readers of Defendants' news reports understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

340.    At the time the statements were made concerning Plaintiff, Defendant's subsidiaries, agents or employees knew or should have known that the statements made concerning Plaintiff were untrue.

341.    Plaintiff is not a public figure.

342.    The allegations made by Defendants concerning Plaintiff's "arrest" and charges constitute libel per se.

343.    Defendants in the matter abused any available privilege when their subsidiaries, employees, agents, and/or contractors made false accusations about Plaintiff being charged with a crime because the allegations were made with reckless disregard for the truth and/or were made by Defendant's agents without using reasonable care to determine the truth of the statements.

344.    Defendants in the matter were grossly negligent by:

   a.  Failing to conduct the proper research and investigate the incident;

   b.  Continuing to report and post unsubstantiated stories after Plaintiff was released;

   c.  Failing to properly run follow up stories with true and correct information;

   d.  Failing to retract their previous false and distorted stories.

345.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has sustained direct and adverse harm.

346.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has been and is greatly injured in his good name, credit and reputation all of which has been to his great detriment and loss.

**WHEREFORE**, Plaintiff Augustine Bangura, by and through his undersigned counsel, demands judgment in his favor and against Defendants and an award of the following:

   a.   compensatory damages and consequential damages;

   b.   attorneys fees and costs; and

   c.   any other relief this Honorable Court deems appropriate under the circumstances.

## COUNT XIII - DEFAMATION

## PLAINTIFF V. DAILY NEWS, LP.

347.    Plaintiff incorporates paragraphs 1- 347 as if fully set forth herein.

348.    Defendants, Daily News, by and through its subsidiary "The New York Daily News," its employees, agents, and/or contractors published information and accused Plaintiff of being: under the influence, arrested, and charged with the serious crime of homicide by motor vehicle.

349.    Defendant's subsidiary the subsidiary "The New York Daily News," by and though its employees, agents, and/or contractors posted a defaming article on their website.

350.    The original incident in this matter occurred on December 7, 2013, and Plaintiff was released from police custody in the early morning hours of December 9, 2013, without being charged of any crime.

351.    An article was posted on "The New York Daily News," website on December 9, 2013 at 3:09 p.m.

352.    The article posted on December 9, 2013 was two full days removed from the underlying incident, and several hours after Plaintiff was released without being charged.

353.    At no time relevant to this incident was Plaintiff told he was under arrest, read his Miranda rights, or charged with a crime by the PSP or PPD Defendants.

354.    The reporting and accusations in the article were false.

355.    The reports and accusations made as stated herein by subsidiaries, employees and /or agents of Defendants were published to others, including friends and relatives of Plaintiff and all viewers or readers of Defendants' news reports.

356.    Plaintiff's friends and relatives understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

357.    All viewers or readers of Defendants' news reports understood the allegations made by subsidiaries, employees, agents, and/or contractors of Defendants and understood the meaning of the false reports and accusations made.

358.    At the time the statements were made concerning Plaintiff, Defendant's subsidiaries, agents or employees knew or should have known that the statements made concerning Plaintiff were untrue.

359.    Plaintiff is not a public figure.

360.    The allegations made by Defendants concerning Plaintiff's "arrest" and charges constitute libel per se.

361.    Defendants in the matter abused any available privilege when their subsidiaries, employees, agents, and/or contractors made false accusations about Plaintiff being charged with a crime because the allegations were made with reckless disregard for the truth and/or were made by Defendant's agents without using reasonable care to determine the truth of the statements.

362.    Defendants in the matter were grossly negligent by:

a.   Failing to conduct the proper research and investigate the incident;

b.   Continuing to report and post unsubstantiated stories after Plaintiff was released;

c.   Failing to properly run follow up stories with true and correct information;

d.   Failing to retract their previous false and distorted stories.

363.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has sustained direct and adverse harm.

364.    As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has been and is greatly injured in his good name, credit and reputation all of which has been to his great detriment and loss.

**WHEREFORE**, Plaintiff Augustine Bangura, by and through his undersigned counsel, demands judgment in his favor and against Defendants and an award of the following:

a.   compensatory damages and consequential damages;

b.   attorneys fees and costs; and

c.   any other relief this Honorable Court deems appropriate under the circumstances.

## COUNT X – FALSE LIGHT PRIVACY TORT

## PLAINTIFF V. MEDIA DEFENDANTS

365.    Plaintiff incorporates paragraphs 1-364 as it fully set forth herein.

366.    The actions of the collective Media Defendants violated Plaintiff's right to privacy by placing him in a false light before the eyes of the general public who reads or views Media Defendants' stories, his friends, family, and potential employers.

367.    As a direct and proximate result of the actions of Defendants acting through its agents, Plaintiff suffered great embarrassment and mental pain and anguish including having to explain the circumstances surrounding this horrific incident, all to his great detriment.


**WHEREFORE**, Plaintiff Augustine Bangura, by and through his undersigned counsel, demands judgment in his favor and against Defendants and an award of the following:

a.      compensatory damages and consequential damages;

b.      attorneys fees and costs; and

c.      any other relief this Honorable Court deems appropriate under the circumstances.

## COUNT XIV - §1983 CLAIM

## PLAINTIFF V. THE POLICE DEFENDANTS


368.    Plaintiff fully incorporates paragraphs 1-367 as it fully set forth herein.

369.    The Civil Rights Act, codified as 42 U.S.C. § 1983, provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to

be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

370.     Plaintiff's "arrest" and detention were unlawful and unjustified, and in violation and deprivation of Plaintiff's civil rights, liberties, privileges, and immunities granted to Plaintiff under the laws of the United States, including the right to be free from unreasonable and unwarranted searches and arrests under the Fourth Amendment of the United States Constitution, and Plaintiff's right to due process of the law under the Fourteenth Amendment of the United States Constitution.

371.     Plaintiff alleges that the Police Defendants deprived Plaintiff of his Fourth and Fourteenth Amendments rights of the United States Constitution in the following ways:

a.   Failing to properly inform Plaintiff he was under arrest;

b.   Failing to properly read Plaintiff his *Miranda* rights as required during a lawful arrest;

c.   Causing Plaintiff to consent to enter the Defendants car through fraud and under false pretenses;

d.   Deceiving the Plaintiff several times as to the extent of their intentions and conduct;

e.   Booking the Plaintiff with no probable cause;

f.   Holding Plaintiff in a cell with no probable cause; and

g.   Detaining the Plaintiff without any explanation as to the extent of his detention.

**WHEREFORE**, Plaintiff Augustine Bangura, by and through his undersigned counsel, demands judgment in his favor and against the Police Defendants and an award of the following:

      a.   compensatory damages and consequential damages;

      b.   punitive damages permitted by applicable law;

      c.   attorneys fees and costs; and

      d.   any other relief this Honorable Court deems appropriate under the circumstances.

## COUNT XV- § 1983 UNLAWFUL ARREST

## PLAINTIFF V. THE POLICE DEFENDANTS

372.    Plaintiff incorporates paragraphs 1-371 as it fully set forth herein.

373.    As stated above, Plaintiff, who at the time was frightened and concerned, was the first individual to call the police about the incident.

374.    As stated above, on or about December 7, 2013 at approximately 10:00 p.m., Plaintiff was wrongfully "arrested."

375.    Plaintiff, who at the time was frightened and concerned, allegedly failed a field sobriety test.

376.    At no time relevant to this matter, did the Police Defendants' agents and employees have the probable cause to conduct even a legal arrest of Plaintiff.

377.    The Police Defendants' agents and employees intentionally misrepresented their position several times to the Plaintiff.

378.    The Police Defendants' agents and employees first deceived the Plaintiff to get Plaintiff into their car when they stated to him they were taking him to the hospital for blood tests, but instead took Plaintiff to the PPD headquarters.

379.    When Plaintiff first entered the PSP Defendant's car he was never handcuffed.

380.    The Police Defendants' agents and employees once again deceived the Plaintiff when Plaintiff asked twice whether he was under arrest when arrived at the PPD Defendant's headquarters, and both times the Police Defendants answered in the negative.

381.    At no time prior to, or after for that matter, was Plaintiff told by the Police Defendants' agents and employees he was under arrest or read his *Miranda* rights.

382.    Plaintiff's "arrest" was unlawful and unjustified, and in violation and deprivation of Plaintiff's civil rights, liberties, privileges, and immunities granted to Plaintiff under the laws of the United States, including the right to be free from unreasonable and unwarranted searches and arrests under the Fourth Amendment of the United States Constitution.

383.    Defendants' actions were motivated by racial animus towards the Plaintiff.

384.    But for the Plaintiff's race, Plaintiff would have been granted basic civil liberties, rights, privileges and immunities by the Police Defendants.

385.    At all times relevant hereto, Plaintiff was not under the influence of any drugs or alcohol.

386.    Plaintiff was unlawfully "arrested" by the Police Defendant's employees without probable cause or sufficient grounds to believe Plaintiff had committed a crime.

387.    Under the facts then available, the arresting PPD Defendants and their employees did not have an objective, good-faith belief that Plaintiff was guilty of an offense, and said the Police Defendants acted negligently, intentionally, and/or recklessly in making such an "arrest."

388.     Plaintiff has suffered material losses, harm, injuries, and damages arising as a direct and proximate result of the aforementioned unlawful "arrest."

389.     In addition to the foregoing losses and damages, Plaintiff has suffered and reasonably expects to continue to suffer from loss of damages to his personal reputation and standing in the community, including humiliation and public ridicule, and emotional distress, all arising as a consequence of and as a direct and proximate result of Defendants' unlawful "arrest."

**WHEREFORE**, Plaintiff Augustine Bangura, by and through his undersigned counsel, demands judgment in his favor and against Defendants and an award of the following:

    a.   compensatory damages and consequential damages;

    b.   punitive damages permitted by applicable law;

    c.   attorneys fees and costs; and

    d.   any other relief this Honorable Court deems appropriate under the circumstances.

## COUNT XVI- § 1983 UNLAWFUL DETENTION OR IMPRISONMENT
## PLAINTIFF V THE POLICE DEFENDANTS

390.     Plaintiff incorporates paragraphs 1-389 as it fully set forth herein.

391.     As stated above, on or about December 7, 2013 at approximately 10:00 p.m., Plaintiff was wrongfully "arrested."

392.     The Police Defendants' agents and employees intentionally misrepresented their position several times to the Plaintiff.

393.    The Police Defendants' agents and employees first deceived the Plaintiff to get Plaintiff into their car when they stated to him they were taking him to the hospital for blood tests, but instead took Plaintiff to the Police headquarters.

394.    Plaintiff entered the Police Defendants' car through fraud and under false pretenses.

395.    At no time was Plaintiff told by any of The Police Defendants' agents and employees that he was under arrest or read his *Miranda* rights.

396.    Subsequent to the above described "arrest," Plaintiff was transported by the Police Defendants' employees to the headquarters of the Philadelphia Police Department.

397.    While Plaintiff was unlawfully detained at the PPD's headquarters, Plaintiff was processed, fingerprinted, photographed, and placed in a holding cell.

398.    At no time during Plaintiff's unlawful detention relative to this matter was Plaintiff charged with any crimes.

399.    Plaintiff's unlawful detention lasted for approximately one and a half days, after which he was released on or about the early morning hours of Monday December 9, 2013.

400.    Plaintiff's detention was unlawful and unjustified, and in violation and deprivation of Plaintiff's civil rights, liberties, privileges, and immunities granted to Plaintiff under the laws of the United States, including the Plaintiff's right to due process of the law under the Fourteenth Amendment of the United States Constitution.

401.    The Police Defendants' actions were motivated by racial animus towards the Plaintiff.

402.    But for the Plaintiff's race, Plaintiff would have been granted basic civil liberties, rights, privileges and immunities by the Police Defendants.

403.    At all times relevant hereto, Plaintiff was not under the influence of any drugs or alcohol.

404.    Plaintiff was unlawfully detained by the Police Defendants' employees without probable cause or sufficient grounds to believe Plaintiff had committed a crime.

405.    Plaintiff has suffered material losses, harm, injuries, and damages arising as a direct and proximate result of the aforementioned unlawful "arrest."

406.    In addition to the foregoing losses and damages, Plaintiff has suffered and reasonably expects to continue to suffer from loss of damages to his personal reputation and standing in the community, including humiliation and public ridicule, and emotional distress, all arising as a consequence of and as a direct and proximate result of Defendants' unlawful "arrest."

**WHEREFORE**, Plaintiff Augustine Bangura, by and through his undersigned counsel, demands judgment in his favor and against Defendants and an award of the following:

   a.   compensatory damages and consequential damages;

   b.   punitive damages permitted by applicable law;

   c.   attorneys fees and costs; and

   d.   any other relief this Honorable Court deems appropriate under the circumstances.

## JURY DEMAND

Plaintiff Augustine Bangura hereby demands trial by jury.

Respectfully submitted,

**BOWMAN & PARTNERS, LLP**

Dated:  September 2, 2014        By:/s/ Michael A. Bowman
                                **MICHAEL A. BOWMAN**
                                PA Identification No.: 81762
                                1905 Spruce Street
                                Philadelphia, PA  19103
                                215-391-4300 phone
                                215-391-4350 facsimile

**VERIFICATION**

I, Augustine Bangura, verify that the statements contained in the foregoing Complaint, and that the statements contained therein are true and correct to the best of my knowledge, information and belief. I also understand that these statements are made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

Dated: 07/30/14

Augustine Bangura